Lori Heft, Appellant in Pro Se Michael S. Kogan, Counsel for Appalachian Brian D. Witzer Lori Heft, Appellant in Pro Se Good morning, your honors. I'm Lori Heft, Appellant, Pro Se. Do you want to reserve some time? Is the total time 15 minutes? It is. And counting. May I speak for 10? May I speak for 11? Yeah, you can reserve four. Okay, thank you. You're going to have to come back up here when you're ready. No, come on up. Yep. Good morning, your honors. I'm going to be reading from something. I have a disability, head injury, and PTSD. I'm going to do the best I can. You're probably wondering why I don't have an attorney. I'm here to ask you to reinstate my adversarial claim, which was timely filed under the rule of excusable neglect. The debtor is also a debtor and a creditor on this bankruptcy of his own bankruptcy. He misappropriated $38,000 in my client trust funds, and my case was dismissed based on a hearing. His attorney is also an individual creditor and an individual creditor as his law office. The estate was able to take $110,000 that I never signed and refused because they didn't have a right to a lien on my case. You know, none of that actually got adjudicated, so why don't you tell us what the mistake was that resulted in dismissal? Because that's really what your problem is, right? Yes. Okay, why don't you just help us out with that part? Sure. I missed the hearings dated February 19th. No, can I read from it, Judge Lafferty? Do whatever you want. I missed hearings and was not allowed to present evidence or ever have the case tried. That's why I wanted it reinstated. I was in the middle of a perfect storm, which was I did not get the mail from the court in February, March, and April, because right before the February 6th hearing, my service dog for disability was diagnosed with bone cancer, and I was told she would be dead by February 14th. February 19th, I hired Judy Lynn Shields. Can I just make sure I understand? You're not saying that somehow the mail went to the wrong house. You're saying you simply didn't see it? I'm saying I live in Playa Vista, and I hired a legal document assistant to check pace her. Well, if things were mailed to you, are you saying they didn't get to the address? Are you saying I got them but I didn't look at them or I didn't realize they were important? I actually live in a building next to this encampment, and I didn't go down to the mail room. My dog had the bone cancer. So you didn't check the mail for three months? I didn't check the mail. I just want to know what you're telling me. The truth is I didn't check the mail for three months. I pay my rent. Even the landlord, we have to pay our rent online. It's right next to the river. It's in the basement. It's a dangerous place as a woman to go down there. We have no security since COVID. It's very sketchy and gross. So, yes, your answer is I didn't check the mail and I didn't get the mail, and I told Judge Basin that, that I was relying on Judy Lynn Shields. She's not a federal bankruptcy helper. She's just a legal document assistant. She has zero experience in federal court. And only on April 21st, I thought I had to come back April 30th. Judge Basin, I thought, said, we're coming back April 30th. He was going to order this to mandatory mediation. That day, February 6th, when I had eight days left for me to live, I said, why don't we just do the mandatory mediation? Mr. Kogan said, this is way too premature. So I thought, like the state court timeline, okay, I guess this is going to drag out for a year. And so Judy contacted me on February 19th, and she said, no further appearances until April 30th. And I submitted that text. So April 21st, I was like, what time do I have to be there April 30th? She said, oh, my God, your case was dismissed. April 22nd, we filed a motion to vacate the dismissal. And in the car is the first time I have heard Judy had dyslexia, some kind of dyscalculia, whatever it is. And I believe potentially like an early onset of dementia, what her father died of. But if she admits those things, she'll never get hired anywhere. So I tried to be gentle and pragmatic. Then we went back to Judge Basin. I called Judge Basin Chambers and told him I never saw that correspondence. I would not have missed an appearance. I'm diligent about things I can be diligent about. And my service dog, instead of having eight more days to live, lived 59 more weeks with stage four bone cancer. And she was with me for 13 years. So the error by me of missing those two hearings on May 8th, Judy Shields and I, we went to public council. Neil Basin told me go to public council. They thought I could. Why don't we call him Judge Basin? Oh, sorry. Certainly. Sure. Judge Neil Basin, who I liked, told me to go to public council. Judy Shields and I went to public council twice. And they told us just tell Judge Basin that this falls under excusable neglect and you're really sorry. And they were aware of excusable neglect because of the unforeseen terminal cancer diagnosis of a service dog. Judy Shields' cognitive impairment, which she submitted a declaration on, which I had no knowledge of. And number three, the fact that I didn't get the mail because it was a backup plan because everything stopped. When you hear the words bone cancer, it's like a race against time. Every day. The reason I didn't go down to the mailboxes, I didn't even take a shower for two months. It was just so heart-wrenching. And going to the places to get to try to save Macy's life was heart-wrenching. I put her in a clinical trial from Yale, where they are, getting a 65% healing of children and animals with bone cancer. But when I look at this situation, that Brian D. Witzer was able to scam $38,000 out of my client. Let's not make those allegations here because we can't try them, okay? We can't find any facts, okay? Can I make sure I understand something? What you're relying on really is just the excusable neglect, right? And some cases that were presented. But I guess my point is Judge Basin had a number of hearings. There were notices that went out. You didn't get them because you made the decision not to go down to the mailbox. And, okay, okay. But what did Judge Basin do that was wrong? I mean, there's two issues here. Judge Basin might have made a mistake or you might have an excuse. I'm hearing I have an excuse. And I have to decide, we have to decide whether the excuse is sufficient or not. But what is it that Judge Basin did that was wrong? What I felt Judge Basin did that was wrong was I felt that I was telling him that I had objective evidence to submit from the state court, which was not my opinion on the financial misconduct. And I asked him. And you get to that if you keep your lawsuit alive and you get to a summary judgment motion or you get to a trial, which didn't happen here. So what Judge Basin did was end this before you got to that point. The question is why was that a mistake other than I think I have great evidence? Because Judge Basin told me February 6th that he was inclined to order it as mandatory mediation, leading me to believe that I would have a due process right to have a trial. Leading you to believe you didn't have to come to hearings? No, no. Okay. I didn't know how. How was that a mistake by Judge Basin? The mistake by Judge Basin, the only mistake I feel by Judge Basin was he referred me to public counsel, that that would be a sufficient way to help myself. He made no representation of warranty to you. I'm sure he told you there was a resource, correct? And you went to the resource. I take responsibility. I went to the resource. I don't know these words, warranty. So let me just go with it. Well, let me tell you what it means, okay? He didn't tell you, I'm telling you to go to public counsel. What he said was, I'm telling you there is a resource, you can use it, right? And you did that. Of course. So that's all good, okay. Yeah, of course. The way that I think that Judge Basin was a little too, I felt that Judge Basin was, I felt the topic of whether or not I could present evidence to the court or deserved to be judicial discretion of excusable neglect for good cause, no bad faith. He didn't seem to, he didn't seem to, he didn't seem to cognize, he didn't seem to synthesize or hear that I was at the cancer care places. On the both hearings, I was at medical treatments. He didn't say if this matter is going to be over in 60 days. He didn't say there was an urgency for mandatory mediation. He didn't give any ticking clock, like you guys are telling me, hey, you have this many minutes. There was just none. On my case with Mr. Whitzer, it dragged out four years. Two years he was in bankruptcy, he concealed it. He actually told me until three months before the bankruptcy, I'm on a $200 million trial. I'm not going to go bankrupt. Everyone who's listed as a creditor knew he was going bankrupt. Okay, again, that's not, we can't make any findings about that, okay? Well, can you make findings about? No, we can't make any findings. Hold, not findings. No. I don't know these words. Okay. Can you reinstate my case based on? Hold on, the word findings threw me off. Can you reinstate my case based on why couldn't Judge Basin have sanctioned me or some other thing than just dispose of my trial, which is about fraud? That's not allowed in the bankruptcy code. It's not allowed for attorneys to abuse the bankruptcy system. It's not allowed for their attorneys to abuse. Yeah, and none of that's been proven yet. So the question is, should Judge Basin have let you go forward? That's the question, right? Yes. Okay. You know, you're under four minutes. Do you want to take a little break now? Totally. Okay, I bet you do. Thank you. Thank you. Yeah. Good morning, Your Honors. Michael Kogan for Brian D. Whitzer, the appellee. This is a difficult one for me. This case has been so difficult because I have, and I think the court, has bent over backwards for the appellant here. Frankly, the empathy shown by Judge Basin throughout the process and the amounts of notice and information provided to the appellant by the court and by the parties to the matter are significant. My brief clearly shows all of the notices and all of the information that was mailed and emailed and responded by the appellant before the hearing on the 20th of February in which the appellant didn't show up, didn't appear. Judge Basin, on a number of occasions in his orders, the court has all of those tentative orders which are parts of the orders, and in the notices to the appellant, discussed that he understood the appellant was pro per, that this is a difficult process. He provided a law clerk to the appellant. I don't recall him providing a public counsel. I think there was some discussion at the February 6th hearing about public counsel, which was not a hearing on the adversary proceeding, by the way. It was a hearing on early, well, it was a, the February 6th hearing in which Ms. Hoff appeared was three different hearings. It was the Chapter 7 trustee in the corporate case motion to dismiss the complaint because he was named as a defendant. It was a relief from stay motion in the main case filed by Ms. Hoff to get relief because she had also sued Ms. DeWitzer in state court and named him as a defendant, and the judge gave her limited ability to serve him because she still hadn't served him in the state court case, but it didn't allow her to proceed in that case. And by the way, he has subsequently dismissed that, vacated that relief from stay, and there is no longer relief from stay given his dismissal order. It's not, I don't think it's in the record, but. And then the third matter was a motion by Ms. DeWitzer for a violation of the stay under 362K because Ms. Hoff filed the state court complaint after the bankruptcy, and after a number of letters, e-mails to her to ask her to withdraw, she didn't. Judge denied that motion. Those were the three matters at that hearing, but at that hearing he also made a note that, because I did appear, and I informed the court that he did not, that he had not, that Ms. DeWitzer had not been served, so he provided information about the, again, the February 20th status conference, and that he would expect that service would occur again, service would occur by that time that Ms. Hoff should get a new summons because the summons were stale. And then counsel, he, you had filed a motion to dismiss. I then subsequently, about a week later, filed a motion to dismiss, asked for it to be heard on short notice on the 20th.  The motion was. The accelerated hearing was denied. The short notice was denied. What he said was no further briefing, but please, but come to, but at the 20th we'll make a determination. At that 20th hearing, Ms. Hoff did not show up, did not file a status report. But he extended the time for service at that point. I was just going to get to that, yes. And so he then issued his own order, which was sent by his clerk, and also I think I sent as well, which basically said Ms. Hoff has until March 5th to get new summons and serve it, that I'm applying a law clerk for your personal service or personal pieces of information if you have any issues. And third, I understand that we are not able to give you legal advice, but we can help you through the process. And then set a status hearing thereafter? I'm sorry? And then set a status hearing? And set the status, next status conference is April 9th. Again, that was served. Did service happen on the 5th? I'm sorry? Did service happen on the 5th of March as indicated in the order? No. Did Ms. Hoff appear at the subsequent status hearing that was scheduled?  And then he issued, I appeared, and he made, again, another court order and basically issued his dismissal order on the 15th of April, six days later. I do want to make a couple of comments because I think I very care. I mean, his two orders are so dispositive in the sense of how much care and effort he went into this case. The facts are very clear how much work everyone put into it, and it's inexcusable for Ms. Hoff to just ignore everything. And I understand her service dog might have cancer, and I'm very sad to hear that. I understand that she may have some disabilities. We don't know what those are necessarily. She never applied for any accommodations at the bankruptcy court at any time, which the local rules provide for. You can apply. There's an application process, and then you give them information, and they give you whatever accommodation you need. She never asked for any continuances of any hearings, other than the trustee's motion to dismiss, which was originally scheduled for I think it was January 6th, and she signed a stipulation that that would be continued to February 6th. And in that stipulation that she signed, Ms. Hoff signed, it specifically said the status conference would be continued to February 20th. So, again, Ms. Hoff not only signed that stipulation, knowingly knowing that the status conference was continued to February 20th, and whether Ms. Shields or somebody else didn't look at the docket, we live in a modern age. It's not like the old days where I'd have to send a big stack of papers to the court and try to figure something out. I go on Pace where I look at that. I can look at the tentative orders. I go on the website. Ms. Hoff is clearly capable of that. And Ms. Shields, who has been assisting her throughout this process from day one, not from February 19th, by the way, because there are decorations from prior to that time that state that. And I just wanted to read this. It's in the appendix that I filed. And this is Ms. Shields' curriculum vitae, whatever that is. She's a certified paralegal from UCLA Paralegal School. And she said, Ployd is a paralegal beginning in 1988, experienced with probate and estate planning, conserverships, family law, civil litigation, bankruptcy, and corporate business transactions. So she's an experienced paralegal in bankruptcy as far as we know from what she has represented. There just is no excuse. And one clarification, and it goes to the hearing before, Ms. DeWitzer did receive the discharge in November of last year. So I know Ms. Shields in her, I mean Ms. Hoff in her brief said that he hadn't received his discharge yet. So I just wanted to let the court know that as well. Is there any other questions? Thank you, now. I have nothing else to add. Other than I live in Playa Vista as well. And I think it's an incredibly safe area, secure area. And I live there because my house in the Palisades burnt. So it's a sad thing for me to live there, but I do live there. I'm sorry, yeah. And also, again, even if Ms. Hoff ignored going to her mailbox, I federal expressed order to her and I emailed her. And she responded to those emails. And that's all on the record, Your Honor. And there are documents over there. Thank you. Thank you. We have a little less than four minutes. Ms. Shields did $200 bankruptcies in 88 at advanced paralegals. She has no federal litigation experience. Mr. Kogan told Judge Basin that he, she was like, I don't know what her injury is. Like my wife says I have a head injury. The only reason I had a personal injury case with Brian D. Witzer was because he said he could win $4 to $5 million at trial. I got from the bankruptcy trustee who seemed very distinguished. He FedExed me things. I got there on February 6th. When Macy was going to die by February 14th, everything stood still. I was handling that crisis. I don't have any emails back and forth with Michael Kogan between February 6th and April 30th. No, I do not. And I understand it's easy to vilify me and pretend that Michael Kogan lives in Playa Vista in a housing project and that he has empathy. No, I don't think it is right for bankruptcy lawyers. I don't think it's right for debtors to be a debtor and a creditor. I don't think it's right to steal 30, for me to not be able to admit evidence from the state bar. They've been on a three-year investigation. Mr. Kogan represented to Judge Basin. There's nothing going on at the state bar. All resolved. They are filing charges against him, and I was pleading with Judge Basin to just let me handle the dog, get a good bankruptcy lawyer. I don't feel anyone should be improper in these chambers. This is way beyond the average person, and I am disabled, or this estate wouldn't have gotten $110,000. I don't even know how they claimed a lien. This estate got paid $110,000 on my personal injury settlement while stealing money from me, while vilifying me the whole time. I mean, this is not justice being served. I wanted to say to Judge Basin, and I told him that day at the beginning of the transcript I had found a bankruptcy lawyer, and he said that could be good. And then after Mr. Kogan spoke, he just flipped. And so these 10 emails, I had no problem communicating with Timothy Yu. He's a licensed bankruptcy person. He FedExed things to my door. I got them. I didn't get the things from Michael Kogan in that time window. Though he says he lives right on the LA River and he knows my life, they still pretend like I have no disabilities, that I don't deserve any latitude. The things that occurred were out of my control. If one of anyone's children had bone cancer or if they were having symptoms of dementia, my friend's father was a judge, Judge Armstrong. He did not want to leave the bench, even though he knew he had that diagnosis. The kids had to fight him. I don't have dementia. I have PTSD and a brain injury. I have illnesses that were out of my control that prohibited my meticulous detail, and I expected that the judge, looking at the seven reasons for excusable neglect, could institute his discretion, given the facts of the matter, show Witzer is a creditor and a debtor on his own bankruptcy. I'm sorry, but I do think some things went on here. And after Witzer, I got some people at Girardi to represent me. I have been through the mill of like a TED Talk of lawyers that have been outside of the bounds. And so I ask you to please explain to me, not today, but there are seven factors for excusable neglect. Judy Lynn Shields fits the criteria. I fit the criteria for medical illness. My service dog fits the criteria of why I didn't get the correspondence. Why did I get Timothy Yu's correspondence? I don't know. He FedExed it right to my door. You're over your time. Thank you very much. Thank you. The matter is under submission, and we'll get you a written decision as soon as we can. Thank you very much. Thank you.
judges: Lafferty, Spraker, and Gan